NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0325n.06

No. 25-6166

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| | | Jul 22, 2026 |
| | | KELLY L. STEPHENS, Clerk |

THE ESTATE OF RUTH ANN JOHNSON,
through Gary Harrison, Administrator,

      Plaintiff-Appellant,

v.

LAW OFFICES OF DAVID A SIMS, PLLC,
et al,

      Defendants-Appellees

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY


OPINION

Before: CLAY, GIBBONS, and BLOOMEKATZ, Circuit Judges.

**CLAY, Circuit Judge.** Gary Harrison, acting as the administrator of Plaintiff Estate of Ruth Ann Johnson, filed this suit against Defendants David A. Sims, Law Offices of David A. Sims, PLLC, Kyle R. Salyer, and Morgan Collins & Yeast, PLLC, alleging legal malpractice and breach of contract claims. The district court dismissed Plaintiff's case with prejudice following Plaintiff's counsel's absence at multiple court-mandated telephonic conferences and failure to timely respond to a show cause order. Plaintiff's timely appeal followed. For the reasons discussed below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual Background

Ruth Ann Johnson was a resident in the care of the Ashland Nursing Home Corporation, Inc. ("Ashland") and Kingsbrook Lifecare Center ("Kingsbrook") in Boyd County, Kentucky. On

November 23, 2018, Johnson suffered a left foot fracture and other injuries at Kingsbrook. Johnson's son, Gary Harrison, who was acting as her Conservator, filed a complaint in Kentucky state court against Ashland and Kingsbrook for their negligent treatment and failure to properly care for Johnson. Harrison retained Defendants David A. Sims, Law Offices of David A. Sims, PLLC, Kyle R. Salyer, and Morgan Collins & Yeast, PLLC to represent Johnson's interests in that litigation.

Unfortunately, for Johnson, her injuries caused her health to decline. She eventually passed away on June 4, 2021. Johnson's death made it necessary for Defendants to revive her suit against Ashland and Kingsbrook in Kentucky state court, but Defendants neglected to do so. Instead, Defendants falsely represented to Harrison that the action was being revived. Consequently, Johnson's state case was dismissed with prejudice.

## B. Procedural History

On September 28, 2023, Gary Harrison, acting as the administrator of Plaintiff Estate of Ruth Ann Johnson, filed this suit against Defendants David A. Sims, Law Offices of David A. Sims, PLLC, Kyle R. Salyer, and Morgan Collins & Yeast, PLLC in the United States District Court for the Southern District of West Virginia. Mark A. Atkinson and Paul L. Frampton, Jr., two attorneys based in West Virginia, represented the estate. The suit alleged legal malpractice and breach of contract claims against Defendants for their failure to revive Johnson's lawsuit in Kentucky state court following her death and was brought in federal court on the basis of diversity jurisdiction. This suit was then transferred to the Eastern District of Kentucky because neither Defendants Sims nor Salyers were residents of West Virginia.

Upon transfer, Magistrate Judge Edward B. Atkins entered an order on the docket scheduling a telephonic conference to occur on September 10, 2024. Neither of Plaintiff's counsel,

however, appeared for the conference. Magistrate Judge Atkins then scheduled a mid-discovery telephonic conference for January 13, 2025, which was reflected in the text of the minute entry for the September 10, 2024 telephonic conference, the civil minutes of that conference, and a subsequent scheduling order entered on September 12, 2024. January 13, 2025 came and went and Plaintiff's counsel again failed to appear for the scheduled telephonic conference. Consequently, Magistrate Judge Atkins issued an order to Plaintiff to show cause "on or before January 22, 202[5]" as to why the matter should not be dismissed for its failure to appear for both the January 13, 2025 and September 10, 2024 telephonic conferences. Civil Minutes, R. 49, PageID #44.

Plaintiff's attorneys replied two days after the deadline. Frampton explained that he had taken primary responsibility over the case even though Atkinson was also an attorney of record. He explained that he never received notice of either conference until they received the court's order to show cause in the mail on January 21, 2025. Frampton did not personally receive the copy of the order until January 22, 2025 because he was out of office attending a focus group on January 21, 2025. From this physical notice, he inquired with the Clerk's Office for the Eastern District of Kentucky to determine why he had not received electronic notice of the prior scheduling orders. He learned that he incorrectly assumed that because he was a member of good standing of the Kentucky State Bar he would receive electronic notice of any docket activity following the cases transfer to the Eastern District of Kentucky. Instead, he would have first needed to be admitted to the Eastern District of Kentucky. He also learned from the Clerk's Office that notice of this requirement is not necessarily given in transferred cases.

Frampton further explained that the court had sent notices of case activity to Atkinson's work email. However, Atkinson did not personally monitor his email in the first instance, relying

instead on his secretary to inform him of relevant emails. Atkinson's secretary failed to do so for this case because Frampton had told the secretary that Frampton had primary responsibility of the matter and would instead keep Atkinson updated on the case's matters.

Despite these issues, Frampton noted that his firm had actively engaged in the discovery process. Frampton represented that he completed and filed his application for admission to practice before the Eastern District of Kentucky. He was admitted to practice before the court on February 3, 2025. Perhaps satisfied by Plaintiff counsel's response, Magistrate Judge Atkins declined to take action on his order to show cause and set further discovery deadlines.

On July 15, 2025, the court issued an order setting a third telephonic conference on July 22, 2025 for the purposes of scheduling a settlement conference. Plaintiff's counsel once again failed to appear. Magistrate Judge Atkins then entered an order scheduling a telephonic settlement conference on September 16, 2025. The order also directed Plaintiff to show cause by July 28, 2025 for their counsel's failure to appear for the July 22, 2025 telephonic conference. Plaintiff was again warned that a failure to respond to this order would result in the cancellation of the fourth settlement conference and a recommendation that this case be dismissed. The July 28, 2025 deadline came and passed without a response from Plaintiff's counsel. Accordingly, Magistrate Judge Atkins vacated the order setting the settlement conference and recommended to the district court that the case be dismissed with prejudice. A day after the deadline, Plaintiff filed its response to the show cause order as well as a post hoc motion for extension of time to respond to the show cause order.

Plaintiff's counsel then filed an objection to Magistrate Judge Atkin's recommendation to dismiss the case. They blamed their failure to respond to the order to show cause on their failure to review the court's July 22, 2025 order, which was caused by a three-day backlog of emails.

Counsel also noted that Magistrate Judge Atkins called counsel on July 22 to inform them that they missed the scheduled telephonic conference but did not mention the order to show cause.

The district court considered and overruled Plaintiff's objections to Magistrate Judge Atkin's recommendation to dismiss the case because Plaintiff's conduct amounted to a failure to prosecute. It also denied as moot Plaintiff's motion for extension of time to respond to the court's July 22, 2025 show cause order. Plaintiff's timely appeal followed. For the reasons discussed below, we affirm the judgment of the district court.

## II.   DISCUSSION

### A. Standard of Review

We review both a district court's denial of a motion for extension of time under Federal Rule of Civil Procedure 6 and decision to dismiss a lawsuit for failure to prosecute for abuse of discretion. *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006); *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008). Under this standard, "we will reverse the district court 'if it improperly applied the governing law, used an erroneous legal standard, or relied upon clearly erroneous findings of fact.'" *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014)).

### B. Analysis

#### 1. Denial of Motion for Extension of Time to Respond to Show Cause Order

"[A] district court has broad discretion to manage its docket." *ACLU of Ky. v. McCreary County*, 607 F.3d 439, 451 (6th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 6(b)(1)(B), a court may extend an expired deadline "for good cause . . . if the party failed to act because of excusable neglect." *C.S. v. McCrumb*, 135 F.4th 1056, 1069 (6th Cir. 2025) (quoting Fed. R. Civ.

P. 6(b)(1)(B)). In reviewing excusable neglect determinations, we balance "five principal factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger*, 467 F.3d at 522.

The district court ultimately did not abuse its discretion when it denied Plaintiff's motion for an extension of time. Plaintiff's failure to act was due to neglect, but it was not excusable. To be sure, the length of the one day delay and its potential prejudice to Defendant were minimal. *See id.* at 522–23 (noting how a two day delay likely had no impact on judicial proceedings). The reason for the delay, however, was not excusable. As discussed, Plaintiff's counsel knew they had received the relevant July 22, 2025 order from the district court but delayed in reading it because they purportedly had a 3-day backlog of emails to review. This backlog, however, does not explain why it took Plaintiff's counsel 7 days to respond to the show cause order after it was received. The delay was also entirely within the control of Plaintiff's counsel since they controlled their emails and were responsible for checking them. Plaintiff's counsel's prior failures to timely respond to the court's orders should have also put them on notice as to how insufficient their internal office procedures were at informing counsel of pertinent court orders. From counsel's history of failure to pay attention to or adhere to the court's orders, it is difficult to conclude that Plaintiff's counsel acted in good faith. Accordingly, we affirm the district court's denial of Plaintiff's motion for an extension of time to respond to the July 15, 2025 show cause order.

### 2. Dismissal for Failure to Prosecute

Pursuant to Federal Rule of Civil Procedure 41(b), a district court may dismiss an action for a plaintiff's failure to prosecute the claim or to comply with the rules or any order of the court.

*Schafer*, 529 F.3d at 736. This is intended "as a tool to effect management of [the court's] docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Id.* (quoting *Knoll v. AT-&-T*, 176 F.3d 359, 362–63 (6th Cir. 1999)). We give district courts "substantial discretion in serving these tasks." *Id.* (quoting *Knoll*, 176 F.3d at 363).

We consider four factors when reviewing a district court's dismissal of a case under Federal Rule of Civil Procedure 41(b) for failure to prosecute:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Knoll*, 176 F.3d at 363. Though a plaintiff's case may be dismissed because of his counsel's unexcused conduct, *see Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962), "we have increasingly emphasized directly sanctioning the delinquent lawyer rather than an innocent client." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) (quoting *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1095 (6th Cir. 1994)); *see also Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 590 (6th Cir. 2001) ("[T]his Court has expressed an extreme reluctance to uphold the dismissal of a case merely to discipline a party's attorney."). We thus apply these factors "more stringently in cases where the plaintiff's attorney's conduct is responsible for the dismissal." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997).

### a. *Willfulness, Bad Faith, or Fault*

To determine whether a plaintiff's actions were motivated by willfulness, bad faith, or fault, "the plaintiff's conduct 'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings.'" *Schafer*, 529 F.3d at 737

(quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)). We have noted that "[t]he dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Id.* (quoting *Wu*, 420 F.3d at 643). "'Contumacious' is defined as 'perverse in resisting authority' and 'stubbornly disobedient.'" *Id.* at 737 (quoting Webster's Third New International Dictionary 497 (1986)). "Although typically none of the factors is outcome dispositive, . . . a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll*, 176 F.3d at 363.

As discussed, the conduct at issue includes (1) Plaintiff's counsel's repeated failures to appear for court-mandated telephonic conferences and (2) counsel's failure to timely respond to the district court's July 22, 2025 show cause order. The latter behavior alone is typically insufficient to support a clear record of contumacious conduct. *See Carpenter*, 723 F.3d at 705 (summarizing cases); *Mulbah*, 261 F.3d at 592.

The former conduct, however, is particularly relevant to this inquiry. We have previously upheld a district court's dismissal of a case for a plaintiff's counsel's failure to appear for multiple pre-trial conferences. *See, e.g.*, *Knoll*, 176 F.3d at 364; *Coston v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir. 1986) (per curiam). In such cases we repeatedly emphasized how a plaintiff's counsel's unexcused failures to appear for pre-trial conferences sufficed to affirm a district court's finding that counsel had engaged in contumacious conduct. *See Knoll*, 176 F.3d at 364 ("Here, counsel neglected plaintiff's case, repeatedly ignored court orders without excuse, and ultimately attempted to force the court to grant a continuance by refusing to proceed on the day of trial."); *Coston*, 789 F.2d at 379 ("The plaintiff's problem here was his chosen attorney's failure to appear on repeated occasions under circumstances deemed unacceptable to the court . . . ."). Indeed, in

cases where we found the district court abused its discretion in dismissing a case for failure to prosecute, we distinguished a counsel's less harmful conduct, such as failing to comply with procedural rules or engage with discovery, from the conduct at issue here: counsel's "fail[ure] to appear at scheduled pretrial conferences." *Carpenter*, 723 F.3d at 705; *Mulbah*, 261 F.3d at 592. Plaintiff's counsel's three unexcused prior failures to appear for court-mandated telephonic conferences demonstrate a clear record of contumacious conduct through a reckless disregard for the effect of his conduct on judicial proceedings. Accordingly, this factor weighs in favor of dismissal.

### b. Prejudice

An adversary is prejudiced by the dismissed party's conduct where the adversary "waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Harmon*, 110 F.3d at 368. The district court found that Defendants wasted resources preparing for and attending the relevant three court-mandated telephonic conferences. This suffices to satisfy the second prong. *See Schafer*, 529 F.3d at 737–40; *Rogers v. City of Warren*, 302 F. App'x 371, 378 (6th Cir. 2008). Thus, this factor also weighs in favor of dismissal.

### c. Notice

"'[P]rior notice, or the lack thereof, is . . . a key consideration' in determining whether a district court abused its discretion in dismissing a case for failure to prosecute." *Schafer*, 529 F.3d at 737 (quoting *Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 615 (6th Cir. 1998)). We typically require prior notice to be "a 'clear indication' that [the court] intended to dismiss [a plaintiff's] case if [the plaintiff] did not take further action." *Wu*, 420 F.3d at 644.

The district court's notice clears this bar. As discussed, the July 22, 2025 order explicitly warned Plaintiff that a failure to respond to the show cause order "will result in the undersigned . . .

recommending that this case be dismissed based on [Plaintiff's] persistent failures to appear." Order, R. 82, PageID #386. Because the order explicitly warned Plaintiff that Magistrate Judge Atkins would recommend dismissal without a timely response, this third factor supports the district court's ultimate dismissal of the case.

### d. Alternative Sanctions

Finally, we consider "whether less drastic sanctions were imposed or considered before dismissal was ordered." *Knoll*, 176 F.3d at 363. "Although a district court in extreme cases has the power to dismiss with prejudice as the first and only sanction, 'where the district court has not manifested consideration of less drastic sanctions, it is more difficult, although not impossible, for this court to conclude that the district court exercised its discretion with appropriate forethought.'" *Carpenter*, 723 F.3d at 709 (quoting *Harmon*, 110 F.3d at 368–69). In such cases, we have said that "'the sanction of dismissal is appropriate only if the attorney's actions amounted to failure to prosecute and no alternative sanction would protect the integrity of the pretrial process.'" *Schafer*, 529 F.3d at 738 (quoting *Wu*, 420 F.3d at 644).

The district court did, however, consider lesser sanctions in its order dismissing this case with prejudice. It ultimately concluded that "it appear[ed] unlikely that [those sanctions] would adequately affect Plaintiff's conduct." Order, R. 123, PageID #834. Due to this consideration, this fourth factor weighs in favor of dismissing this action. *See Mager v. Wis. Cent. Ltd.*, 924 F.3d 831, 840 (6th Cir. 2019).

## III. CONCLUSION

All four factors counsel in favor of dismissal. The district court therefore did not abuse its discretion when it dismissed this case with prejudice for Plaintiff's counsel's repeated failure to

appear for court-mandated hearings. For the reasons set forth above, we **AFFIRM** the district court's judgment.